**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Willie Saddler Bey,

Plaintiff,

v.

Brooklyn Center Hotel, Ltd.
and Remington
Employers' Management Corporation,
both d/b/a Holiday Inn North,

Defendants.

Civil No. 00-458 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Robert F. Mannella, Esq., Babcock, Neilson, Mannella, LaFleur & Klint, P.L.L.P., 118 East Main Street, Anoka, Minnesota 55303, appeared on behalf of the Plaintiff.

Anne-Marie Mizel, Esq., Mizel Law Office, 858 Kennebec Street, Pittsburgh, Pennsylvania, 15217 and Erin K.F. Lisle, Esq., Kelly & Berens, 3720 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402, appeared on behalf of the Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 18, 2001, pursuant to Defendants' Motion for Summary Judgment. In his Complaint, Plaintiff asserts that his tonsillar and palatal difficulties constitute a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, *et seq.*, and that his termination for absence without medical documentation resulted in a violation of the aforesaid Acts. For the reasons stated below, Defendants' motion is granted.

FILED MAY 23 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD MAY 23 2001
DEPUTY CLERK

## Background

Plaintiff William Saddler Bey worked as a van driver for Defendant Holiday Inn Minneapolis North ("Hotel") from September 1998 through April 23, 1999. Prior to working for the Hotel, Mr. Bey was employed by the U.S. Postal Service until he left due to a chronic back problem which limited his ability to carry and lift. Shortly after Mr. Bey began work for the Hotel, Doug Parcells joined the management team for the purpose of streamlining hotel operations. Toward that end, Mr. Parcells drafted a checklist of responsibilities for van drivers and discussed them with each relevant employee, including Mr. Bey.

At this time, Mr. Bey informed Mr. Parcells of his back condition and his corresponding inability to perform several of the tasks listed as his responsibilities, *e.g.*, carrying luggage for guests, keeping Hotel common areas clean during non-driving time, and assisting with deliveries to the Hotel and its guests. Mr. Parcells requested that Mr. Bey provide documentation that he was under a physician's care. When Mr. Bey presented Mr. Parcells with a doctor's letter from 1992, Mr. Parcells asked for more current documentation. Mr. Bey did not provide any further documentation regarding his back condition, but he was permitted to continue work for the Hotel without having to perform the responsibilities mentioned above. In January 1999, Mr. Parcells was promoted and replaced by Adam Boler. Defendants maintain that Mr. Parcells informed Mr. Boler that he should continue to not require Mr. Bey's performance of the relevant responsibilities.

In April 1999, Mr. Bey began to experience soreness in his throat. On April 10, 1999, Mr. Bey went to a hospital emergency room for treatment of his throat. Subsequent to that visit, Mr. Bey brought a doctor's note to the Hotel, indicating that he should not return to work for seven days. Pursuant to that note, Mr. Boler took Mr. Bey off of the schedule for seven days,

until April 17, 1999. On April 16, 1999, Mr. Bey went to the Hotel to pick up a paycheck and to inform Mr. Boler that he would need to be off the schedule for more time because he was scheduled for a tonsillectomy. Defendants contend that Mr. Boler indicated he would do so provided Mr. Bey brought further documentation from a physician. They further contend that Mr. Bey indicated he would not trouble his doctor at this time and would bring documentation after the surgery. Mr. Bey contends that he understood that he should provide documentation *after* the surgery in order to return to work. Mr. Bey did not provide further documentation.

On August 17, 1999, having not received any medical documentation from Mr. Bey, Mr. Boler put Mr. Bey on the schedule. Mr. Bey did not report to work on April 17, 19, or 20, 1999, and he did not telephone the Hotel to inform them of each absence.[1] On April 23, 1999, Mr. Bey was terminated from his position with the Hotel because he was "a no call/no show" and was "considered to have voluntarily quit."

The Hotel's employee policy states with regard to absences and tardiness:

> Employees are responsible for reporting absences personally, and should not rely on other people to notify their manager of absence. Be absolutely sure that you understand how your manager wants you to comply with this rule and whom you must contact. . . .
>
> Absence for two (2) consecutive days without notice to management is considered a no-call, no-show situation and is grounds for termination for job abandonment. If you know in advance that you will be out for medical reasons (e.g. an operation), we appreciate as much advance notice as possible so that your supervisor can schedule your work appropriately.

---

[1] There is evidence that on five prior occasions, Mr. Bey telephoned the Hotel, pursuant to employee policy, to inform management that he would be absent.

According to a physician's letter dated July 13, 1999, Mr. Bey was hospitalized for a tonsillectomy and adenoidectomy on April 27, 1999, and was unable to return to work until May 4, 1999.

Plaintiff alleges that Defendants discriminated against him because of his disability, namely his "tonsillar and palatal difficulties." Defendants' current motion is for summary judgment on all issues, arguing that tonsillar and palatal difficulties does not qualify as a disability under the ADA or MHRA and further, that the Hotel had a legitimate basis for terminating Mr. Bey's employment.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party

opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

A *prima facie* case of disability discrimination requires proof that: (1) the plaintiff suffers from a disability that substantially limits a major life activity; (2) he is qualified to perform the essential functions of the job, with or without accommodation; and (3) he has suffered an adverse employment action because of his disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111-12 (8th Cir. 1995). The Eighth Circuit has held that the analysis of disability claims is the same under both the ADA and the MHRA. *See Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 441 (1997).

The Court's analysis need go no further than the first element of Plaintiff's claim. To succeed on an ADA discrimination claim, a plaintiff must establish that he is disabled as defined under the Act. What constitutes a disability under the ADA has been codified and explained in its corresponding regulations as an impairment that "substantially limits" a life activity. When evaluating whether a disability "substantially limits" life activity, a court is to consider:

> (2) (i) The nature and severity of the impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (2001). "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R., app. § 1630.2 (j), p. 352 (July 1, 2000). *See also Heintzelman v. Runyon*,

120 F.3d 143, 145 (8th Cir. 1997) (finding that asserted inability to work while recovering from surgery is not evidence of permanent impairment).

Mr. Bey characterizes his disability as his inability to work due to his tonsillar and palatal difficulties. According to the record before the Court, Mr. Bey's condition rendered him unable to work from April 10, 1999, through May 4, 1999, a period of several weeks. There is no evidence before the Court that Mr. Bey suffers any lingering effects from his previous condition or the surgery. Indeed, Mr. Bey's condition was serious, and it did interfere with his ability to work for a relatively short time. However, because of the temporary nature of Mr. Bey's condition, the Court cannot find that his tonsillar and palatal difficulties constitute a "disability" under either the ADA or the MHRA. Thus, Mr. Bey's cause of action must fail as he is unable to establish a required element of his claim.

To the extent that it was argued at hearing that Mr. Bey was discriminated against because of his alleged *back* disability, Mr. Bey's claim also must fail. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court set forth a three-stage burden-shifting test that has been consistently applied in discrimination cases. *See Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (adopting *McDonnell Douglas* test as applied in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 520 (1993)). If the plaintiff is successful in establishing a *prima facie* case, then the burden shifts to the defendant who is required to provide evidence of a valid, non-discriminatory reason for the alleged discriminatory conduct. *Ryther*, 108 F.3d at 836. Should the defendant produce such evidence, then the burden shifts back to the plaintiff requiring him/her to prove intentional discrimination. *Id.* The plaintiff is not required to present new evidence at this stage. Instead, it is sufficient for the plaintiff to rely on the evidence presented to

establish the *prima facie* case coupled with the claim that the defendant's reason is mere pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-48 (2000).

Assuming the establishment of a *prima facie* case with respect to his back disability, the Court then turns to Defendants' explanation of Mr. Bey's termination. While there is some dispute with respect to Mr. Bey's understanding of what was required of him to validate his absences, there is no evidence that his termination for "no call/no show" was mere pretext for Defendants' discrimination against his back disability. While it is true that Plaintiff need provide no *additional* evidence to establish that Defendants' explanation is pretextual, there is *no* evidence of the assumed *prima facie* case that would support such an argument. The only evidence relating to Mr. Bey's back condition indicates the voluntary accommodation by the Defendants, despite the lack of requested, up-to-date medical documentation. Rather than supporting Mr. Bey's argument of pretext, such evidence instead tends to strengthen Defendants' position. While it is plausible that such discriminatory circumstances could exist, the Court has been presented with no evidence that such circumstances were present in this case. For these reasons, Plaintiff's argument is without merit. Nonetheless, the theory of pretext is completely outside the scope of Plaintiff's Complaint, and even if meritorious, no relief could be granted within the limits of the current lawsuit.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendants' Motion for Summary Judgment (Doc. No. 15) is **GRANTED** in its entirety; and

2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 23, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995